Case number 20-1441 et al. American Soybean Association Petitioner v. Michael S. Regan, Administrator, U.S. Environmental Protection Agency et al. Mr. Sauer for the petitioners, Mr. Knutson for the respondents, jurisdiction and cutoff date issues, Mr. Grosko for the respondents, Endangered Species Act challenges. Morning, Council. Mr. Sauer, please proceed when you're ready. Good morning. Edmund Sauer on behalf of the petitioners. I'd like to reserve five minutes for a moment. Petitioners have protectively filed actions both in this court and in the D.C. District Court, challenging EPA's adoption of certain restrictions on growers use of the herbicide dicamba. Although the party certainly can't confer jurisdiction on either court, all of the parties here agree the petitioners claims should be brought in the D.C. District Court. Petitioners therefore ask because there has been no public hearing under FIFRA that this case be dismissed and the District Court action be allowed to proceed. If the court reaches the merits, we'd ask that the court remand the dicamba registration to EPA without vacating it for further consideration. EPA is certainly afforded wide latitude in conducting scientific analysis within its expertise, but it necessarily abuses that discretion when it fails to articulate a reasoned explanation for its decision. And we have two ways that EPA failed to engage in reasonable decision making here. One, it failed to consider highly relevant sub-county nature serve data, and two, it failed to explain why it chose one, one size fits all policy instead of other reasonable alternatives. So if we get to the merits, can we talk a little bit about jurisdiction? Yes, ma'am. Yeah. So how do we distinguish the facts here from our Kossel case from the 80s, right? Cause there we explicitly noted there was no notice. There's no notice here. How do we distinguish that case? Sure, Your Honor. Well, the Kossel involved a very unique procedural posture where you had highly individualized dispute, two parties and the agency on a pure legal issue where those two parties were fully heard twice on that pure legal issue. The issue was, were they entitled to a hearing under section six of FIFRA? In that circumstance, all of the interested parties had notice of the pure legal issue, an opportunity to brief it, and the record was complete. And so the court of appeals said, well, yes, we have a pure legal issue here. This does not fall within the heartland of FIFRA. It's not a registration decision. It's just a pure legal issue. And so we can think of this as having had a public hearing. Of course, this is very different. This isn't an individualized dispute. We have a broad class of interested parties that are interested in the registration decision. And so all of the concerns that the court addressed, the sufficiency of the record, et cetera, that the court addressed in Kossel just doesn't translate into this context. Is the upshot of Kossel, though, even in the way you described it, that we engage an inquiry on whether, even though there wasn't formally notice, that essentially everybody who needed to know knew. And so we then treat the circumstances as if there was a hearing. I would read Kossel a little bit differently. I think the analysis in Kossel is that when the agency is acting in a capacity outside FIFRA's heartland, outside the mainland, the kind of registration decision that's at issue here, perhaps on the margins, you can look to see if the parties have erred in a public setting, which could be individual dispute, you can look and see that's a public hearing. Again, Your Honor, we don't have that. There's no need to look beyond what Congress told us in FIFRA was a public hearing, which is, it's a threshold matter, opportunity for notice and comment within the federal register. Section, I'm sorry, Your Honor. I was just wondering whether there's any reason to think that the parties that are interested aren't, you know, didn't have awareness of this and a reasonable opportunity to speak to it. And in part flowing from the fact that in 2016, there was notice and comment and granted it's on a slightly different issue, but nonetheless, people have sort of come to the table and have they remained there since? Yes, Your Honor, we are among the parties that did not know about in advance about the particular terms of the registration that were imposed here. There was no advance notice given that there would be a national cutoff date of June 30th and July 31st. No advance notice. So none of the submissions that I've seen in the record, and certainly none of the ones that our clients submitted addressed the terms of the proposed regulation. There was also no notice that the ESA buffer size would be tripled. But even if there were conceivably, Judge Pillard, the possibility that a particular petition may have received notice or may not have received notice, I would ask the court to please adopt a clear jurisdictional rule that would allow the parties the predictability of knowing, is there a notice in a public forum in the Federal Register? So in a situation where parties have to file in district court and this court simultaneously, obviously seems very bad in terms of not having a clear rule. But I guess I'm wondering, what is the clear rule that this court would draw in light of CASEL? Without overturning CASEL, what is the possibility of drawing a clear line that's faithful both to the text of the statute and doesn't overrule CASEL? Sure. The rule that I would propose is consistent both with FIFRA's language and the case law is this. When the agency is exercising its registration authority under FIFRA, the heartland of FIFRA as I called it, there must be what Congress prescribed in Section 21D, notice and an opportunity to comment, notice provided in the Federal Register. That is a clear, bright line rule that all the parties in the courts can follow and know whether to proceed in the Court of Appeals or in the district court. The thing that's unclear to me, and I think this is as much a creation of our own cases as anything, I mean, your argument, but even if there isn't notice and comment, proceeding in the district court doesn't cure that. The district court, like this court, proceeds on the administrative record. So it's just that the fact that public hearing triggers our jurisdiction in the way that we've been discussing, it's just unclear why lack of public hearing would in any way be ameliorated by proceeding first in the district. Sure, Your Honor. I would say two things. One, we might think that it's wise for actions to proceed in the appellate court and there's no benefit in the district court. Clearly that's a judgment for Congress to make, so we're wrestling with that statute. Setting that aside, there are reasons why in certain cases we would want the opportunity to proceed in the district court. The D.C. District Court certainly starts with the appellate record, the administrative record as the focal point, but it's well-established in case law in this district court that even in record cases like this, there are opportunities to provide extra record evidence that's not in the administrative record to show gaps in the agency's decision making. That would be like the Alvarez case or the Esch case or the Oceana case in the district court reported opinion. So there are benefits that maybe Congress had in mind. It's not evidence in the record, but there are benefits to starting some cases out in the district court. District courts can help distill the legal and factual issues and weed out frivolous claims that won't need to come to this court, but ultimately that's a decision that Congress had made, and the rule that we propose, notice and comment, is consistent with what 21D says. 21D says public hearings shall be commenced with notice, comment published in the Federal Register. And that's plain, easily applied rule. And it's consistent with all of the cases nationwide that have been decided in the registration context. The cases where there's been a registration decision that was preceded by notice and comment, like this court's decision in CBD in 2017, the Ninth Circuit's opinion in United Farm Workers in 2010, involved registration decisions after notice and comment. The case that's actually most on point with this is a district court case. Defenders of Wildlife v. Jackson, which here in the district court, DC district court, there was a registration decision, there was no notice and comment, the district court in a published opinion said, there's no notice and comment, there's been no public hearing, I have exclusive original jurisdiction. So it's not your position that all registrations require notice and comment, but where a registration is made after notice and comment. Exactly, Your Honor. If it's public notice and comment, then you have direct review. Correct. In certain situations, the act requires the agency to conduct notice and comment, but it's not a uniform rule. But there are jurisdictional consequences for that decision. If they decide to conduct notice and comment on a registration decision or a re-registration decision, then there would be an opportunity for the parties to present themselves, to exhaust their arguments before the agency and the court would have a record for a public hearing for judicial review. But if not, then there hasn't been a public hearing for different purposes. So your perspective and response to Judge Pillard's question is that, is not just that the statute says that this should go to the district court in the first instance, the world works better if a case like this goes to the district court in the first instance rather than coming to us in the first instance. Yes, Your Honor. There are a lot of reasons why Congress may have done that to ensure that parties like us have an opportunity to provide input in decision-making, to ensure that the district court has an opportunity to evaluate the sufficiency of the record, to weed out frivolous claims, there are a lot of goods that could come out of district court review beyond what we've agreed the statute to require, which is district court review in a sense. I see I'm eating into my rebuttal time, Your Honor, if I may say that. You may, as we have additional questions for you, and we'll give you a rebuttal time. Mr. Knutson. Thank you. Good morning and may it please the court. My name is Andrew Knutson representing  Environmental Protection Agency. I'm here to speak on behalf of the Environmental Protection Agency. I'll address the issue of subject matter jurisdiction and the challenges to the application cutoff dates and my co-counsel Mr. Grosko will address the Endangered Species Act issues for six minutes. Starting with jurisdiction, this is perhaps an unusual case and that all the parties here agree that this court lacks subject matter jurisdiction and that it should be dismissed and in this matter heard in the district courts because these registrations were not issued following a public hearing under Section 16B and the United States reasoning for that is that the statutory text and particularly the limitation of judicial review to parties to the proceeding before the agency demonstrates that a public hearing must include at minimum some kind of specific pre-notice pre-action notice to potentially affected parties and without a public notice requirement, then this limitation to parties to the proceeding could have the effect of precluding parties from invoking this court's jurisdiction in cases where there may have been a hearing but not a public one. Has it had any prejudicial effect here? Excuse me? Has it had any prejudicial effect here? Your Honor, we don't we don't think it has here in this case. We noted in our briefs that there's at least there's no indication that there are parties that were unfairly left out of the proceedings here. But as the United States is considering how this court's interpretation of 16B affects not just this case but also going forward potential fairness issues that potentially adversely affect the parties. And here we believe that this limitation to a circuit court review for the potentially affected parties is really implicates fairness issues if no public notice is required before granting this court exclusive jurisdiction over these actions. So do you agree with petitioner's articulation of the rule that we should set for when parties go to this court or to the district court? Not entirely, Your Honor. I heard the petitioner's piece arguing that that a public hearing under section 16B would only be met by federal register notice and a comment period. And we don't think that 16B needs to be read that narrowly or in fact even that this case that this court in this case needs to address kind of the form or content of the notice is sufficient because here the parties are all in agreement that there was simply no notice of EPA's receipt of these applications for registration or its intended action on those on those registrations. We do agree that this court's decision in Kostal doesn't... Why wouldn't we say that federal register notice is necessary given section 21? Which clearly seems to require notice in the federal register. We leave that unstated when the statute seems to provide a rule. Your Honor, the reason that the United States doesn't believe that that's the case, one of the reasons we believe that's not the case is because Kostal itself seems to preclude that reading. There's language in Kostal that suggests that section 16B public hearing is not necessarily as narrow as a public hearing as defined in section 21. So it's at least possible that some other form of notice could satisfy that. Is there any advantage to the EPA in providing notice in a form that's not in the federal register? I mean, is it common for the agency to provide notice in some other way when there is public notice in common? I mean, isn't it just typical for notice to be in the federal register? What would be the advantage to the agency of leaving that open? In the FIFRA context, Your Honor, in terms of registration decisions, FIFRA only requires a federal register notice in certain limited circumstances involving a registration application with a new active ingredient or changed use pattern. EPA has in the past used, at times under its kind of discretionary public participation policies, has solicited comment through other means such as posting a notice of application on its website in a way that the public can access. And in those situations, would the EPA think there would be direct review in this court? It's possible, Your Honor. It is. But again, we don't think that the court needs to reach that here. Just again, given the lack of that kind of notice. It doesn't really help us get a rule that would be useful to parties in terms of figuring out which court they should go to rather than bringing simultaneous suits in the District Court and the Court of Appeals. We think that the guiding requirement, or maybe the most important guide in determining whether there's been sufficient notice, is whether the potential adversely affected parties that would be initially excluded from invoking the court's jurisdiction have been put on notice. And we think that that's kind of what Costol advises here. Because, as the Petitioner's Counsel noted, that decision needs to be considered in the context of the very narrow action that was being challenged there. The question, essentially, is whether EPA had called a public hearing on a decision not to hold a hearing at the request of interested parties. And they're the only potentially affected parties were the ones who had requested a hearing who necessarily had notice in that case. But that's why we believe that the court didn't focus on the public notice requirement in that case. It focused instead on whether the proceedings were sufficient. So maybe Costol can be limited to its facts. We think, at least, that on the question of notice, it could be limited to its facts. It could certainly stand for the proposition that an adequate record for review is necessary but not sufficient for a circuit court jurisdiction. But we think that public notice is also a minimum requirement. And we think on that issue that the Ninth Circuit's decision in Northwest Food Process Association is a helpful guide as well, given that that case addresses a case where two different decisions by EPA were both considered in part of the same proceedings. EPA considered objections to both aspects of that decision. But one aspect of that decision, the existing stocks provision, was included in the public notice of the hearing. And the other aspect, excuse me, I've got the reverse. The cancellation decision was included in the pre-action notice. The existing stocks provision involved in that case was not included in the cancellation decision. And the Ninth Circuit found in that case that whereas those proceedings were sufficient to invoke jurisdiction for the cancellation decision because of the inclusion of notice, they were not sufficient to constitute a public hearing on the existing stocks provision. And it particularly noted the unfairness to parties that would not have been put on notice and wouldn't have had an opportunity to invoke the court's jurisdiction. I was asking if you say COSTL could be limited to its facts. I mean, obviously it wouldn't be the fact that the hearing component of it was already on notice. What's the relevant facts that you would identify? Is it because one way to look at it is because of the sequence of events there, it had to be the case that everybody who had an interest in the hearing component of it already had notice because they had an interest in the cancellation. But then that seems to beg an inquiry that just looks to how apparent is it that everyone who had notice would have had notice? And if we do that, then it would allow for potentially reaching the conclusion in this case that their notice considerations were satisfied too. What's the essential facts? Your Honor, I think it's the fact that, again, this is not, it was not merely the parties that had an interest in the cancellation, but specifically an interest in whether or not EPA would grant these requests for a hearing on that cancellation. And there we think that is, that is an extremely narrow issue to be challenged that, which is one of the few cases where it is clear on its face that the only parties potentially adversely affected did have notice. And we think that's, that's worlds away from the registration decision that's involved here, where a much broader universe of parties could have interest in that decision that could potentially be affected. So because of the sequence of events in that case, there was no pot, there's just no possibility that anyone else would have needed notice that did not otherwise already have it. Yes, Your Honor, that's already. In any situation outside of that, there's at least a possibility. That's enough. I think that's right. Your Honor. Yes. Can I ask you a question about let's my colleagues have further question about this part, just on standing. So in theory, even if we thought that jurisdictionally, this belongs in the district court, standing is still something in theory we could consider the district court considered. I think, I think either court could do it. And I'm just wondering, does this do the supplemental affidavits on standing affect your sense of whether there is a standing here? Your Honor, that's an issue that my co-counsel is prepared to address because it involves the ESA issue. So if there are no further questions, I'll further me. Thank you. Thank you. Mr. Groskow. Good morning, Your Honors. I'm Brett Groskow from the Department of Justice. I'll be addressing the ESA issues. I'd like to emphasize three points. You might speak up or adjust the microphone. I'm sure it's the recording will pick you up. Thank you, Judge Pillar. I'd like to address three issues today. First, I'd like to talk about the, a little bit about the history and the context of the ESA buffers. I do want to address standing and I will get to that very quickly, Judge Strauss, and also record of view issues. First of all, this is a story of EPA taking reasonable steps to make sure that it meets both its FFRA and Dangerous Species Act obligations. In 2016, EPA first authorized biochemical for over the top use on cotton and soybean and immediately put in place at 110 foot buffer. So everyone was on notice that buffers were at issue already in 2016. There were no, there were reports of offsite movement and therefore EPA required there to be certified applicators and those certified applicators had to go through specific training. That's already in 2017. In 2018, EPA adds the 57 foot omnidirectional buffers for those counties. So already everyone's on notice that we're talking about 57 foot buffers, every county where there's an ESA listed species. And we're talking of hundreds, if not really many, many hundreds of endangered or threatened plants across these 34 states where this applies. That's 2018. In 2020, of course, the Ninth Circuit and National Family Farm Coalition finds the EPA has, in fact, underestimated the amount of offsite movement there's been. The EPA goes back to the drawing board. The petitioners here are involved as amici in the National Family Farm Coalition case. They're on notice of what had been going on. At that point in 2018, there is already still a 110 foot buffer for downwind. In 2020, importantly, I want to be clear, 240 feet for those counties where there are no ESA listed species, and 310 where they do exist. But petitioners do not talk about this, but they have the option, growers do, to go back over that area when the wind shifts and effectively reduce it down, mitigate that ESA listed buffer. So that's in 2020. EPA is responding to the Ninth Circuit decision, which I urge the court to read. I commend that one to you. And we think EPA has been entirely reasonable in the way it's handled this product. On to standing. And Commissioner Potson, you specifically raised the question of the second Howell and Robertson declarations filed with the district's reply. If you look at, for example, paragraph 13 of the second Howell declaration, paragraph 16 of the Robertson, second Robertson declaration, these are individuals who have farms in North Carolina, the coast, and South Texas, New Season, and other counties. And at no point do these folks say anything, even in their second round of declarations, other than that they are subject to ESA buffers. And we don't think that's enough to make out a claim of injury. In fact, we think that they would have to show that it's a bit tied up in the fact that we don't have the nature of documents before us. This court has no documents at all to evaluate this, but, you know, they'd have to be able to connect the dots. They'd have to be able to show that their farm would no longer be in the footprint of an endangered species, not longer... If sub-county data were used, they'd have to show that delta difference between using... Correct, that it would make a difference, that it would actually have some difference, that there would be some redressability. Let me ask you, Mr. Grosko, a prior question, which is, in looking for where the petitioners raised the objection to the failure to use the sub-county data, it's in, I gather, footnote 9 on JA-10. Is that enough to preserve this particular objection? It just doesn't talk about the scope of any buffer. It just says, hey, we've got this great nature-served data, you should look at it. Right, it actually refers to pre-served data, which is apparently a culling. It's referenced by citation, so in the record review context, we don't have this idea that you can cite two documents and those are automatically incorporated into the record. The interviewers never provided sub-nature-served data. And let me be perfectly clear, EPA lacks a subscription to nature-served. It doesn't have the ability on its own to obtain this. Doesn't Fish and Wildlife use it? So that's an interesting question, Judge Pillard. There are references to that, but if you look at the biological, it's really the only two citations in footnote 10 of the intervener's brief that refer to plants specifically. And of course, plants are different than animals in this respect. But the biological opinion and the Federal Register notice for the Virginia Spirea, they talk about, for example, nature-served data being referenced by Fish and Wildlife Service for something like hydrology quotation in that if you look at the actual citation itself for Virginia Spirea, it's talking about hydrology. It's not talking about the location of the plant. So it's not clear from the citations that interveners have provided that Fish and Wildlife Service relies on nature- served data for location. Looking at the other side of the coin, can you point me to anywhere in the record where EPA supports its reasoning using county level data? Yes. At J.A. 212-213, EPA talks about how Fish and Wildlife Service is the recognized expert. That's what Congress intended. This court and courts across the country have recognized that. And this is data Fish and Wildlife Service vetted by expert biologists. And we're not talking about a sort of haphazard collection of information by individuals as to where an individual of a plant might exist. We're talking about a more fulsome, comprehensive evaluation. Do you have any further questions? Thank you, counsel. Thank you. Mr. Sauer, we'll hear from you on rebuttal. Is there a five? You were at four and a half minutes. We'll round it up to your five. I appreciate that, Your Honor. We just discussed jurisdiction briefly. I think the government proposed a jurisdictional rule short of notice and comment, something along the lines of, did the parties have notice of it? I'd make two points. I think that's an unworkable rule because it will continue to invite the question, did these parties have sufficient notice? And we're back in the same quagmire that we're in right now, where we don't know where to go to the Court of Appeals or to the district court. The clear notice and comment in the Federal Register jurisdictional rule, it's consistent with 21D of FIFRA. It's consistent with every case that's been decided in the registration context, would solve the problem that we've been faced with consistently. It also would raise this bizarre situation where one petitioner would have to come to this court if he or she had adequate notice or guessed that he or she had adequate notice, but then another petitioner would have to challenge the same registration in the district court because he or she may not have had adequate notice. So you could have a claim under FIFRA proceeding in the district court at the same time one is proceeding in the Court of Appeals. So we would ask the court not to adopt that evade jurisdictional rule and instead go with something clear that explains the case law way and also 21D of FIFRA. Notice and public comment, public hearing has occurred in registration, the Court of Appeals has jurisdiction. There's nothing in CASEL that is to the contrary. There's a footnote 25 that says in that unique situation 21D doesn't govern. It's not controlling. If we don't dispute that it's not controlling our argument accepts that maybe CASEL address the unique procedural posture, but it's certainly Congress had on its mind registration decisions when it was writing 21D and in that smart land the plain and simple public notice rule should govern. Are there other questions about jurisdiction? I just say two things on standing and merits. Your Honor, standing can be raised here or in the trial court. This court does not have to address standing if it does not need to, if it dismisses on jurisdictional grounds. The redressability issue. I was just saying, I mean, I think we could address standing if we wanted to. Yes, of course. Even if we thought there's no sequencing rule for the court. The second issue, the redressability argument, there's a relapsed redressability standard that applies when a party is alleging that the agency didn't engage in certain analysis that this court applies pretty routinely. You have to show that the agency's outcome could be different if the procedural error were fixed. That's the standard that we would satisfy here in our original declaration satisfied and so did the subsequent declarations. And then Judge Pillard, on your point about it, I think it was more of an administrative exhaustion point. Did we raise this? I would say two things. We don't have the data. It's proprietary data that EPA required the registrants to develop back in the 90s. So even if we had been provided notice and an opportunity to provide comment on these particular terms, it would be impossible for us to provide the data. But ultimately, the Endangered Species Act imposes on the agency an obligation to find that data out even if the party doesn't raise it. That's defenders of wildlife case in the Fourth Circuit. It's a statutory obligation. But ultimately, we didn't have notice of these terms. So it would be hard for it to hold us to have administratively failed to preserve the argument when we didn't have notice of the terms themselves. So the question is, we ask the court to dismiss this for lack of subject matter jurisdiction or otherwise remand without vacancy. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Rao